## Case No. 3,604.

### DAVIDSON v. DRAPER.[1]

[5 Int. Rev. Rec. 94.]

Circuit Court, S. D. New York. Feb. 21, 1867.

CUSTOMS DUTIES— CONCLUSIVENESS OF APPRAISAL —PURCHASE IN DEPRECIATED CURRENCY—WOOL.

[Wool imported from the Argentine republic under the act of June 30, 1864 (13 Stat. 206), was purchased as shown by the invoice, in depreciated paper money, at a price which, when reduced to United States money according to the value of gold on the day of purchase, was less than 12 cents per pound. The wool was not shipped for some time after the purchase, the currency fluctuating in the meantime, but the actual value on the day of exportation, calculated according to the value of gold on that day, was also less than 12 cents a pound. If, however, the invoice price were calculated according to the value of gold on the date of shipment, such price exceeded 12 cents. This method was adopted by the appraiser in making the valuation, thus rendering the wool dutiable at 6 instead of 3 cents a pound, under the act of June 30, 1864. *Held*, that this appraisement was not conclusive on the court, although no reappraisement was demanded, and, as the wool was actually worth less than 12 cents at the time and place of shipment, the importer could recover the excess of duty paid.]

In this case suit was brought [by Edward F. Davidson against Simeon Draper, late collector of the port of New York] in the circuit court, for the district of New York, to recover duties exacted upon wool imported from Buenos Ayres in May, 1865. One invoice of 224 bales was purchased there December 9, 1864, and shipped February 1, 1865. The other invoice, of 100 bales, was purchased there January 13, 1865, and shipped February 10, 1865. The purchases were made in the depreciated paper dollar of Buenos Ayres. The consul certified on the back of each invoice the rate of the paper dollar in gold doubloons, both at the date of the purchase and at the date of the exportation, the value having varied during the interval. The wool having also fallen in value during the same time, the importer, on entering the wool, presented the invoice, but stated in his entry the actual value of the wool at the date of shipment. The appraiser, however, reported the value at "over 12 and less than 24 cents per pound," and duty was assessed and collected at the rate of 6 cents per pound instead of 3 cents per pound, which would have been the legal rate if the value of the wool had been less than 12 cents. It appeared on the trial, February 21, 1867, that if the price of the wool when purchased had been reduced to United States currency, valuing the paper dollar at the rate on the day of purchase as certified by the consul, the value would have been less than 12 cents per pound; also, that if the price in paper money, at the date of exportation, had been reduced

according to the value of gold at the date of exportation, the value would have been less than 12 cents per pound. The only method of valuing the wool at more than 12 cents per pound was by its cost in paper dollars on the day of purchase, reduced according to the value of gold on the day of exportation. These facts were testified to by the appraiser, who swore that the actual value of the wool, at the date of shipment, was less than 12 cents per pound, and that such would have been his appraisement if he had not supposed he was controlled by the value stated in the invoice, under which impression he made his return, "by taking the value of the invoices and reducing them according to the consular certificate on the day of the shipment." Upon the foregoing facts the judge directed a verdict for the plaintiff; motion was made by the district attorney for a new trial, but after argument, judgment was rendered on the verdict. The question, coming before the treasury department, whether or not the case should be taken to the supreme court on error or appeal, was carefully considered by the collector of New York, the district attorney, the solicitor and the secretary of the treasury, and after full advisement it was decided to pay the amount claimed, and the sum of $10,564.29 was accordingly paid, April 29, 1868.

Extract from brief of Webster & Craig:

Questions respecting the conclusiveness of appraisements have arisen on the importation of wool under the fourth section of the act of congress of June 30, 1864, which provides that the duty on wool, "the value whereof at the last port or place from whence exported to the United States, exclusive of charges in such ports, shall be twelve cents or less per pound, three cents per pound." Under the sixteenth section of the act of 1842 [5 Stat. 563] it is the duty of the appraisers to report the value of the wool at the last port or place. The section concludes as follows: "And it shall, in every such case, be the duty of the appraisers of the United States, and of every one of them, and of every other person who shall act as such appraiser, by all the reasonable ways and means in his or their power, to ascertain, estimate and appraise the true and actual value, any invoice or affidavit thereto to the contrary notwithstanding, of the said goods, wares and merchandise." The seventh section of act of March 3, 1865 [13 Stat. 493], is to be read in association with the section of the act of 1842, just quoted, in order to ascertain what officers make appraisements. It is clear, in respect to wool, that it is made the duty of the appraiser to report, "any invoice or affidavit to the contrary notwithstanding," the true and actual value of the wool, whether it is over or under twelve cents. There is, however, a provision of law, first enacted in 1842, enlarged in 1846, and repeated in subsequent acts, to the effect that

---

[1] [From collection of "Trials" in the library of the United States supreme court at Washington, D. C. 5 Int. Rev. Rec. 94, contains but a partial report, and the title of Davidson v. Smythe.]

the "duty shall not be assessed upon an amount less than the invoice or entered value, any act of congress to the contrary notwithstanding." The wool provisions of the act of 1864 are clearly a pro tanto repeal of this clause just quoted, in cases where the value of wool may have fallen between the time of purchase or invoice and the date of exportation,—in cases where the invoice price is more, and the value at time of exportation less, than twelve cents per pound. But, on account of a practice of the appraisers, never to return value less than the invoice price, the wool clause before referred to is nullified. This practice of the appraisers grew, it is believed, out of the following department letter:

"Treasury Department, May 8, 1856. Sir: I have examined the question presented in your letter of the 2d instant, in regard to the assessment of duties on an importation of molasses from Trinidad de Cuba, in which the appraisers have returned a value less than that admitted and declared in the entry. The question presented is, which value shall be taken as the dutiable value? I have already stated, in circular 63, the grounds on which I have decided that the proviso to the 8th section of the act of 1846 [9 Stat. 43] is still in force. That proviso prohibits, in any case, duties to be assessed on a less than the invoice value. The party having availed himself, in this case, of the privilege of raising the invoice in his entry, I am of the opinion that under the proviso duties cannot be assessed on less than the invoice value so raised and declared in the entry. The invoice value, when the importer does not choose to raise that value when he makes the entry, in his declaration of the market value at the period of importation, and when he does raise it, the increased value, in his declaration of the market value at the period of exportation; and these declarations of the importer, as to the market value, are the strongest evidence that the market value is not too low that the appraisers can have, and ought never to be departed from by the appraisers, unless they have satisfactory evidence that the market value is greater. I can not comprehend how it is the appraisers can undertake to say that they will disbelieve the importer's own declaration of value when he produces his invoice, and when he adds to his invoice value, and that he, the appraiser, knows better than the importer, and, therefore, disbelieves him and finds the value less than he has declared it to be. The persistence in such a course by the appraisers would prove an obliquity of judgment that it is impossible to comprehend or provide against. The duty cannot be assessed upon less than the increased declared value, no matter what may be the appraised value returned by the appraisers; and you should report all cases where the appraisers undertake thus to set aside the evidence of the importer's declaration of value.

Very respectfully, P. G. Washington. To H. J. Redfield, Esq., Collector."

The practical effect of this department letter has been, that few or no appraisers venture to return the dutiable value less than the invoice or entered value. They report, "Invoice correct," or "Invoice sufficient." Such a return, when influenced, guided and controlled by the invoice value, is clearly illegal, because the statute is peremptory that the appraisers are, "by all reasonable ways and means in his or their power, to ascertain, estimate and appraise the true and actual value, any invoice or affidavit thereto to the contrary notwithstanding." This vicious system is one which a re-appraisement cannot cure, because the government re-appraiser feels as much bound by the department letter of May 8, 1856, as do the local appraisers. There is no remedy but in appeal to the courts. Where the local appraisers make an illegal return, the importer has a right to go to the courts on that.

Extract from additional brief:

But it is contended by the defendant that the proviso of the seventh section of the act of March 3, 1865, provides that duty "shall not be assessed upon an amount less than the invoice or entered value, any act of congress to the contrary notwithstanding." This proviso is in substance contained in the proviso to the eighth section of the tariff act of 1846, and contained down through subsequent acts to 1865. We agree with Mr. Justice Woodbury, in Marriott v. Brune, 9 How. [50 U. S.] 639, that the language of the proviso is not artistic or very clear, but that its evident purpose, looking to all the circumstances, is, that the collector, in the case of ad valorem rates, shall not take duty upon less than the invoice price, no matter what the return of the appraisers may be. But it will be seen that, if the proviso is to have the effect contended for in this case by the defendant, it completely nullifies the fourth section of the act of June 30, 1864, in respect to wool. where the language is explicit that the value is to be predicated as of the time of exportation. In a case, therefore, in which the invoice price, as in the present case, differs from the value at the time and period of exportation, and the collector is compelled to be governed by the invoice price, there is such a conflict that the two provisions of law cannot stand together. We are very confident that the proviso of the seventh section cannot have the effect in the present case which is contended for by the defendant. We are satisfied, however, that a proviso, similar to the one in the seventh section, contained in previous cases, has led to all the difficulty in this case. We have before us a letter, dated May 8, 1856, addressed to Collector Redfield, and signed "P. G. Washington, Assistant-Secretary of the Treasury," which explains how it happens that the appraisers never return the value less than the invoice price. (Here fol-

·lows the letter.) We cannot think that Mr. Guthrie, who was then secretary of the treasury, and whose great ability can never justly be drawn in question, ever intended to say that, under the provisions of the act of 1842, which directs appraisers "by all reasonable ways and means in his or their power to ascertain, estimate and appraise the true and actual market value and wholesale price, any invoice or affidavit thereto to the contrary notwithstanding," they were not to report the value as they found it. It may be that the secretary would consider a different report as evidence of error in judgment; but if the judgment of the appraiser was correct in finding the value less than the invoice price, it cannot be possible that the secretary of the treasury would be justified in directing appraisers to be controlled by the invoice in making their return. The true duty of the appraisers is to find the value, and state it accordingly. It is then the duty of the collector, in proper cases, to apply the proviso in question. .No better illustration could be had ·of the error and different proceeding, than the case now at bar.

JUDGE SMALLEY'S DECISION. No. formal opinion was ever prepared by Judge SMALLEY. A verdict was taken nisi, and after a careful examination of the questions in the case he ordered judgment upon it for the plaintiff. He was requested to prepare a written opinion, and to aid him in doing so, the plaintiff's last brief was prepared, which is substantially correct; but he did not find time to write any opinion before the action of the treasury department in paying the judgment. The following imperfect statement of Judge SMALLEY'S ruling at the trial is taken from the New York Herald of February 22, 1867:

"The court said that the rights and equity of the case were very clearly with the plaintiff. There was no doubt at all that the government had $10,000 of the plaintiff's money which it had no earthly right to, and which in equity and good conscience it was bound to restore without instituting a suit to recover through the courts. The evidence shows, and the officers themselves show, that the wool in question was worth only three cents as a dutiable article. The defence is purely technical, which, I must say, I regret a great government like ours should ever make. It is not creditable to the government to embarrass merchants in this way; to say to them, 'The merchandise which I have taken by a strong arm, these $10,000 of yours, plaintiff, which I have possessed myself of, I will keep, availing myself of the technicalities of the law, so as to keep it and withhold it from you.' The court must deal with the law as it finds it. The courts do not make the law, nor do they execute it; the courts only administer it as they find it. The law officers of the government—the United States district attorney in this case—are

7FED.CAS.—3

bound to defend these cases arising under these acts, and the courts are bound to adjudicate on them; but it is clear that a great wrong is done in compelling the collectors to bear the brunt of these actions. I will direct a verdict for the plaintiff in the case on the facts, and if the counsel desire it, I will hear arguments on the points of law hereafter."

Verdict accordingly for the plaintiff.